**UNITED STATES of America, Plaintiff,**

v.

**Harold Wayne MANES, Defendant.**

**No. CR 75–185.**

United States District Court,
D. Oregon.

April 22, 1976.

Sidney I. Lezak, U. S. Atty., Charles H. Turner, Asst. U. S. Atty., Dist. of Oregon, Portland, Or., for plaintiff.

David S. Teske, Federal Defender Section, Metropolitan Public Defender, Portland, Or., for defendant.

## OPINION

SKOPIL, District Judge:

Billy Duwayne Garr and Harold Wayne Manes were indicted on five counts arising from the alleged theft of cedar from forest lands owned by the United States. Counts I through IV charged violations of 18 U.S.C. § 641, which applies to anyone who "embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of" any property of the United States.[1] Count V charged violation of 18 U.S.C. § 1361, which applies to anyone who "willfully injures or commits any depredation against" any property of the United States.[2]

Garr subsequently entered a plea of guilty to Count II pursuant to an agreement with the government for the dismissal of the remaining counts. Manes (hereafter "the defendant") waived jury trial and was tried to the court on October 31, 1975. A large portion of the evidence introduced was in the form of a stipulation. Garr testified against the defendant.

The defendant has in essence conceded that he is guilty of *some* offense arising from the alleged theft of cedar. However, he contends that the indictment is defective in various respects which were fully revealed only after the government's evidence was received. He moves for dismissal of some or all of the counts of the indictment.

To understand defendant's arguments, an analysis of the charges and of the evidence adduced is necessary. The indictment charged as follows:

"*COUNT I*: That *on or about May 14, 1975*, in Lane County, Oregon, in the District of Oregon, BILLY DUWAYNE GARR and HAROLD WAYNE MANES, defendants herein, did *unlawfully, wilfully and knowingly convert to their own use* certain property of the United States having a value in excess of $100.00, to-wit: timber owned by the United States; in violation of Section 641, Title 18, United States Code.

"*COUNT II*: That *on or about May 29, 1975*, in Lane County, Oregon, in the District of Oregon, BILLY DUWAYNE GARR and HAROLD WAYNE MANES, defendants herein, did *unlawfully, wilfully and knowingly steal and purloin* certain property of the United States having a value in excess of $100.00, to-wit: timber owned by the United States; in violation of Section 641, Title 18, United States Code.

"*COUNT III*: That *on or about May 30, 1975*, in Lane County, in the District of Oregon, BILLY DUWAYNE GARR and HAROLD WAYNE MANES, defendants herein, did *unlawfully, wilfully and knowingly convert to their own use* certain property of the United States having a value in excess of $100.00, to wit: timber owned by the United States; in viola-

---

1. Section 641 provides in pertinent part:

 "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; . . .

 "Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

 "The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

2. Section 1361 provides:

 "Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, shall be punished as follows:

 "If the damage to such property exceeds the sum of $100, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both; if the damage to such property does not exceed the sum of $100, by a fine of not more than $1,000 or by imprisonment for not more than one year, or both."

tion of Section 641, Title 18, United States Code.

"*COUNT IV*: That *in or about May, 1975, the exact dates to the Grand Jurors unknown*, in Lane County, Oregon, in the District of Oregon, BILLY DUWAYNE GARR and HAROLD WAYNE MANES, defendants herein, did *unlawfully, wilfully and knowingly and without authority, sell, convey and dispose of* certain property of the United States having a value in excess of $100.00, to-wit: timber owned by the United States; in violation of Section 641, Title 18, United States Code.

"*COUNT V*: That *on or about May 29, 1975*, in Lane County, Oregon, in the District of Oregon, BILLY DUWAYNE GARR and HAROLD WAYNE MANES, defendants herein, did *unlawfully, wilfully and knowingly injure and commit certain depredations against* property of the United States, by cutting certain timber owned by the United States and managed by the United States Forest Service, thereby causing damage in excess of $100.00; all in violation of Section 1361, Title 18, United States Code." (emphasis added)

Count I of the indictment is based upon a theft of May 14, 1975. It involved two trees felled on Bureau of Land Management land located near Congdon Creek Road in Section 29, Township 15 South, Range 7 West, of the Willamette Meridian (Ex. 4–9). The value of this timber (including 3,000 board feet actually removed from the site and 4,000 feet left there) was estimated at $637 (Stipulation, at 9–10).

Count II is based upon the severance of trees on May 29, 1975. It involved two cedar trees on United States Forest Service land located near a spur road leading off Road No. 1901 and the North Fork Road in Section 29, Township 19 South, Range 5 East, of the Willamette Meridian (Ex. 10–13, 23, 24).

Count III is based upon the transportation of cedar away from the site of the severance on the following day, May 30, 1975. The value of this timber (including 3,420 board feet removed from and 3,740 board feet left at the scene) was estimated at $917.19 (Stipulation, at 13).

Count IV is based upon alleged sales to defendant's father during or about May, 1975, of cedar stolen from the above two sites and from two additional sites on United States Forest Service land. The first additional site was off Road No. 1553 in the vicinity of Blue River, Oregon, in Section 27, Township 15 South, Range 5 East, of the Willamette Meridian (Ex. 3, 23). Cedar of undetermined value was taken from one tree at this location on April 9, 1975. The second additional site was near Salmon Creek off Road No. 2042 in Section 33, Township 20 South, Range 4 East, of the Willamette Meridian (Stipulation, at 13; Ex. 23). Six trees were felled in this area prior to May 31, 1975, two of them by Garr and the defendant, and timber worth $1,300 (Stipulation, at 13–14) was removed by them.

Count V charges injury and depredations caused on May 29, 1975, by cutting the timber involved in Counts II and III.

The evidence establishes beyond a reasonable doubt that Garr and the defendant stole cedar from the four sites described above and later sold it to the defendant's father. The defendant raises four arguments, however, which he claims necessitate dismissal of some or all of the counts of the indictment.

## MULTIPLICITOUS INDICTMENT

Defendant first argues that Counts III, IV, and V must be dismissed because the indictment multiplies two offenses (those charged in Counts I and II) into five, contrary to congressional intent. He cites two Supreme Court cases holding that Congress did not intend that a defendant charged with both larceny or robbery and receiving goods stolen in the same transaction be convicted of both offenses. *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) (18 U.S.C. § 641); *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) (18 U.S.C. § 2113). In addition, he relies upon *Morissette v. United*

*States*, 342 U.S. 246, 271–273, 72 S.Ct. 240, 96 L.Ed. 288 (1952), which discusses Congress' purpose in enacting § 641.[3] The Court concluded:

"It is not surprising if there is considerable overlapping in the embezzlement, stealing, purloining and knowing conversion grouped in this statute. What has concerned codifiers of the larceny-type offense is that gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches. The books contain a surfeit of cases drawing fine distinctions between slightly different circumstances under which one may obtain wrongful advantages from another's property. The codifiers wanted to reach all such instances." *Id.*, at 271, 72 S.Ct. at 254.

From this language the defendant argues that Congress intended that the various common-law crimes grouped in § 641 be considered as mere definitional aspects of a single broadened offense of larceny.

The government replies, first, that Count V need not be dismissed because it charges a violation of § 1361,[4] an entirely different offense with separate and distinct elements from § 641. Second, Count IV need not be dismissed because it involves *all* sales during May, 1975, and has an independent factual basis in sale of cedar from two sites in addition to those involved in Counts I and II. The only remaining question, then, is whether the defendant may be convicted of both Count II ("stealing and purloining" by severing two trees on May 29, 1975) and Count III ("knowingly converting to his own use" by transporting cedar away from the site on May 30, 1975). The government argues that Counts II and III constitute two separate offenses because the trees were cut on one occasion and the timber removed on another. Even if the defendant is correct that he may be *convicted* on only one of the two counts, he may be *charged* with both offenses to ensure that

the indictment covers whatever criminal activity is proven by the evidence. If he is guilty of both offenses, the court must decide on which of the two counts the conviction should rest and must dismiss the remaining count.

*Count V*

Count V charges a violation of 18 U.S.C. § 1361, while Counts II and III (involving the same transaction) are based on 18 U.S.C. § 641. The government is correct that a single transaction may give rise to several infractions of the law, each of which may be the subject of a separate charge as well as consecutive sentences. A defendant may, for example, be convicted of burglary for entering a building and of larceny for a theft committed after entry. A defendant may not, however, be convicted of separate offenses unless each requires proof of a different element:

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

In this case the alleged violations of § 641 and § 1361 involve three elements which are identical: (1) wilfulness, (2) property of the United States, and (3) value (or damage) in excess of $100. Each statutory provision, however, also includes a fourth element which is not the same. Counts II and III allege that defendant "stole, purloined, and knowingly converted" timber. Count V, on the other hand, alleges that defendant "knowingly injured and committed depredations against" property of the United States. In theory, at least, the same transaction could constitute a violation of both § 641 and § 1361.[5]

---

**3.** Section 641 is quoted in note 1, *supra*.

**4.** Section 1361 is quoted in note 2, *supra*.

**5.** For example, a defendant might violate § 641 by cutting and stealing timber and § 1361 by causing damage to the surrounding environment. See *Magnolia Motor & Logging Compa-*

■ The indictment is nonetheless defective when viewed in light of the facts in this case. The only "injury" or "depredation" which the government alleges in support of Count V is the cutting of timber. The identical facts are relied upon to prove the allegations of Counts II and III that the defendant "stole, purloined, and knowingly converted" property of the United States. Under these circumstances *Blockburger* requires dismissal of Count V.[6]

■ Alternatively, the dismissal of Count V might be based upon a simple failure of proof. Section 1361 requires a showing of injury or depradation causing "damage" to property in excess of the statutory sum. The government has proven that the defendant stole timber of a value in excess of the statutory amount but presented no evidence that government property was "damaged" in any given amount in the process.[7]

## Count IV

■ Count IV clearly is not multiplicitous because it has a factual basis independent from the remaining counts. The

ny v. United States, 264 F.2d 950 (9th Cir. 1959).

**6.** *United States v. Cedar*, 437 F.2d 1033 (9th Cir. 1971), might appear to require a contrary conclusion. In that case the defendant was convicted under 18 U.S.C. § 641 of nine counts of stealing trees and under 18 U.S.C. § 1853 of seven counts of cutting trees. The defendant argued that a growing tree must be cut to be stolen so that the two crimes necessarily merged. The court upheld the consecutive sentences on the ground that the elements of the two offenses differed markedly, each requiring proof the other did not.

The *Cedar* case can be distinguished. First, the elements of § 641 and § 1361 are much more similar than those of § 641 and § 1853. Second, the evidence in *Cedar* was that many trees which were cut were not removed. The evidence offered in support of the stealing and cutting counts was therefore not identical. Moreover, the court noted that the appellant "[did] not raise the question of whether each count involved a separate offense under the applicable statute", *id.*, at 1036 n. 2, but merely argued that sentencing could be only for the more serious offense and not the lesser included offense as well.

government proved that the defendant violated § 641 by selling timber taken from two sites in addition to those involved in Counts I and II.[8]

## Count III

The government cites *United States v. Sawyers*, 186 F.Supp. 264 (N.D.Cal.1960), in support of its argument that a defendant may be convicted of two separate offenses for cutting timber and removing it from the site. That case states, however, that

"a defendant may not be twice punished, once for cutting, and once for removing, the identical timber, where the cutting and removing are *a part of a single continuous operation*". *Id.*, at 266 (emphasis added).

Cf. *Thomas v. United States*, 249 F.2d 429 (9th Cir. 1957) (charging theft and sale under § 641). See also *Milanovich v. United States*, 365 U.S. 551, 553–554, 81 S.Ct. 728, 5 L.Ed.2d 723 (1961), and *Heflin v. United States*, 358 U.S. 415, 419–420, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959).

■ When the evidence in support of Counts II and III is analyzed, it is evident

**7.** The government could have charged the defendant in Count V with depredations caused in connection with theft of the timber involved in Count I rather than Count II. The evidence establishes that such depredations in fact occurred. Stipulation at 8. The defendant could not be convicted of the felony charge for those acts, however, because no evidence was introduced to establish the dollar amount of the resulting damage. In any case, the government is bound by the language of the indictment and its own post-trial statements that Count V is related to Count II. Government's Answer to Defendant's Pretrial Motion to Dismiss the Indictment or in the Alternative for Other Relief, at 3 n. 7 and Exhibit A.

**8.** Even if the government had not proven the additional sales, the defendant could be convicted of both theft and sale under § 641 so long as the two offenses were not part of a single continuous transaction. *Hawkins v. United States*, 458 F.2d 1153 (5th Cir. 1972); *Thomas v. United States*, 249 F.2d 429 (9th Cir. 1957); *United States v. Sawyers*, 186 F.Supp. 264 (N.D.Cal.1960). These cases are contrary to the interpretation of *Morissette, supra*, urged by the defendant.

that the cutting and removal of timber charged in these two counts were part of a single continuous operation. Both counts involve the same two actors, the same site, and the same timber. I am persuaded by the evidence that the defendant and Garr spread their activities over a period of more than one day for the simple reason that cutting and removing the two trees could not be accomplished in a single trip. It was not improper for the government to charge the defendant of both counts, but he may be convicted of only one. *Milanovich, supra,* 365 U.S. at 554–555, 81 S.Ct. 728. Count II is dismissed.[9]

## DOUBLE JEOPARDY

Defendant's second argument essentially duplicates his first. He argues that Counts III, IV, and V must be dismissed because the multiplicitous indictment violates the Fifth Amendment by putting him in jeopardy more than once for a single offense.[10] The government replies that this argument must fall of its own weight because the double jeopardy clause applies only to *successive* prosecutions.

Most of the cases decided under the double jeopardy clause have involved successive prosecutions. Some of the language in the cases, however, indicates that double jeopardy questions may also arise in the context of a multiplicitous indictment. See, *e. g., Iannelli v. United States,* 420 U.S. 770, 792–793, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975)

(Douglas, J., dissenting); *Gore v. United States,* 357 U.S. 386, 392, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *O'Clair v. United States,* 470 F.2d 1199, 1203 (1st Cir. 1972), cert. denied, 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148 (1973); *Smith v. Cox,* 435 F.2d 453, 456 (4th Cir. 1970), vacated on other grounds, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971); *United States v. Selage,* 175 F.Supp. 439, 443 (W.D.S.D. 1959).

I need not decide whether the defendant's argument has a constitutional basis in the double jeopardy clause. Whether or not it does, my disposition of his argument would remain the same as that set forth in the preceding part of this opinion.

## FAILURE TO PROSECUTE UNDER SPECIFIC STATUTE

The defendant also argues that the entire indictment should be dismissed because the government has attempted to prosecute him under the general statutes of 18 U.S.C. §§ 641 and 1361 instead of under the specific statute of 18 U.S.C. § 1852, which Congress intended to be controlling. The latter misdemeanor statute is directed specifically to cutting, destruction, and removal of timber from public lands of the United States.[11]

■ The defendant's argument is without merit. The distinction between the elements of § 1852 and the offenses charged in

9. A further problem is presented by the government's theory about Counts II and III. One case in this circuit holds that the cutting of a growing tree does not fall within the terms of § 641, which applies only to theft of personal property, *i. e.,* trees already converted to logs by cutting. *United States v. Lamb,* 150 F.Supp. 310 (N.D.Cal.1957), aff'd sub nom. *Magnolia Motor & Logging Company v. U. S.,* 264 F.2d 950 (9th Cir.), cert. denied, 361 U.S. 815 (1959). If this is true, the defendant can be charged under § 641 only for the removal of timber already cut, not for the cutting itself.

10. The double jeopardy clause provides:
 "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

11. Section 1852 provides:
 "Whoever cuts, or wantonly destroys any timber growing on the public lands of the United States; or
 "Whoever removes any timber from said public lands, with intent to export or to dispose of the same; or
 "Whoever, being the owner, master, pilot, operator, or consignee of any vessel, motor vehicle, or aircraft or the owner, director, or agent of any railroad, knowingly transports any timber so cut or removed from said lands, or lumber manufactured therefrom—
 "Shall be fined not more than $1,000 or *imprisoned not more than one year, or both."*

this case are sufficient that a defendant violating both may be prosecuted under either. *United States v. Lamb*, 150 F.Supp. 310 (N.D.Cal.1957), aff'd sub nom. *Magnolia Motor & Logging Company v. United States*, 264 F.2d 950, 954 (9th Cir.), cert. denied, 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 61 (1959).

### ABUSE OF PROSECUTORIAL DISCRETION

 The defendant's final argument is that Counts III, IV, and V should be dismissed because the government has abused its prosecutorial discretion by employing a multiplicitous indictment and by charging him under felony statutes instead of under § 1852. The indictment in this case may not have been a model of clarity. But it certainly was not an abuse of prosecutorial discretion justifying dismissal of any of the counts charged.

Counts II and V of the indictment are dismissed.

I find the defendant guilty as charged in Counts I, III, and IV.[12]

This Opinion shall constitute special findings of fact and conclusions of law pursuant to Fed.R.Crim.P. 23(c).

---

12. The defendant contends that the element of value in excess of $100 has not been proven and that he can be found guilty only of the lesser included offense within § 641. See note 1, *supra*. The government's evidence, summarized at pages 3–4, *supra*, establishes the element of value over $100 for Counts I, III, and IV.