**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4307

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CASEY LEE EVANS, a/k/a James Casey Lee Evans,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:21-cr-00032-MR-WCM-1)

Argued:  January 27, 2023                      Decided:  July 25, 2023

Before AGEE, QUATTLEBAUM, and RUSHING, Circuit Judges.

Vacated and remanded by published opinion.  Judge Rushing wrote the opinion, in which Judge Agee and Judge Quattlebaum joined.

**ARGUED:**  Jeffrey William Gillette, GILLETTE LAW FIRM, PLLC, Franklin, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:**  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

RUSHING, Circuit Judge:

Federal law makes it a crime to, "willfully and without authority, set[] on fire any timber, underbrush, or grass or other inflammable material . . . upon any lands owned or leased by . . . the United States."  18 U.S.C. § 1855.  A jury convicted Casey Evans of violating this statute after he started a brush fire that burned 70 acres of the Nantahala National Forest in western North Carolina.  Evans asserts his innocence, claiming he did not act with a culpable mental state because he thought he was setting the fire on his family's land, not on federal government property.  His arguments require us to address the scope of Section 1855's *mens rea* requirement.

We conclude that specific knowledge of federal ownership is not required for conviction.  Therefore, the Government did not have to prove that Evans knew he was on federal land or intended to burn federal land.  But the Government did have to prove that Evans acted willfully, and an honest mistake of fact about whether he was burning brush on his own property would be a viable defense.  The district court excluded testimony about Evans's belief that he was on his family's property when he set the fire, thereby preventing him from presenting his primary defense to the jury.  We therefore vacate his conviction and remand for further proceedings.

I.

In December 2021, a grand jury charged Evans with one count of violating 18 U.S.C. § 1855.  Evans pleaded not guilty.  To convict Evans, the Government had to prove beyond a reasonable doubt that (1) Evans "set[] on fire any timber, underbrush, or grass, or other inflammable material," (2) he set the fire willfully, (3) he did not have authority

2

to set the fire, and (4) the fire was on land owned by the United States. 18 U.S.C. § 1855; *see United States v. Abner*, 35 F.3d 251, 254 (6th Cir. 1994).

Before trial, the parties disputed the scope of Section 1855's willfulness element. The Government moved *in limine* to exclude all evidence and argument that the statute required it to prove that Evans knew he was on federal land or intended to burn federal land when he set the fire. In the Government's view, Section 1855's federal-ownership requirement is a jurisdictional element to which no scienter attaches. Evans responded that knowledge of federal ownership is an element of the offense, at least in his case, because whether he had such knowledge was the difference between whether he acted innocently or criminally. Evans explained that he anticipated offering evidence at trial "that he had a sincere and reasonable belief that his actions took place on land owned by his family" and argued that "[i]f the facts are/were as he believed, his actions would be innocent and lawful." J.A. 33.

Evans also requested a jury instruction stating that willfulness requires acting "voluntarily and intentionally and with the specific intent to do something that the law forbids; that is to say with bad purpose either to disobey or disregard the law." J.A. 27. Consistent with his opposition to the Government's motion *in limine*, Evans justified the instruction on the ground that he would present evidence "tend[ing] to show that he had a reasonable belief that his activities were undertaken on private land owned by his family and with their authorization." J.A. 28.

The district court granted the Government's motion *in limine*, concluding that Section 1855's willfulness element requires only a general intent to set the fire. As the

3

court explained: "[T]he jury will be instructed that the government has to prove that the defendant set the fire intentionally and willfully. The government does not need to prove that the defendant did so knowing or intending to burn the property owned by the government." J.A. 49. The court acknowledged Evans's counterargument that burning one's own property is typically not a crime but rejected it because burning someone else's land without authorization is unlawful regardless of whether the United States is the owner. In other words, the court reasoned, "this provision in Section 1855 concerning land owned by the government is merely jurisdictional." J.A. 49. Evans reiterated his argument about a defendant who "makes an honest mistake about the culpable element," but the district court did not specifically address the issue. J.A. 50.

At trial, Evans admitted that he made a brush pile, set it on fire, and did so without the federal government's permission. Fire investigators described how they found the fire's area of origin, and a professional surveyor gave expert testimony that he surveyed that area and concluded it was within the Nantahala National Forest, which the U.S. Forest Service owns.

Although Evans questioned the surveyor's evidence, the trial largely turned on whether the Government could prove that Evans acted willfully. A firefighter and several members of law enforcement testified that Evans voluntarily spoke to them on the day he set the fire and several occasions thereafter. According to their testimony, Evans told them he set the fire, recognized the fire was on government-owned land, and made several remarks that a factfinder could interpret as evincing a bad purpose or guilty conscience. But when Evans took the stand, he disputed their testimony, asserted they misunderstood

4

him, and blamed his comments on being regularly intoxicated in the weeks after the fire. He denied saying he "knew or believed that the property where [he] set the fire was on government land." J.A. 429.

A portion of Evans's testimony, however, was excluded by the district court's earlier ruling. Outside the jury's presence, Evans proffered testimony that he believed he was on his family's land when he assembled the brush pile and set it on fire. Evans explained his family's long ownership of property abutting the Nantahala National Forest and his understanding of the boundary lines based on certain markers on the property. Relative to those boundaries, Evans proffered, he believed that he was on family land when he set the fire. The court excluded Evans's testimony about his belief as irrelevant because Section 1855's jurisdictional element contains no scienter requirement. The court also rejected Evans's attempt to offer testimony limited to the fact of certain boundary markers, which the court concluded would confuse the jury and impermissibly blur the lines between lay and expert testimony.

The jury convicted Evans, and the court sentenced him to time served followed by two years of supervised release. Evans appealed, and we have jurisdiction under 28 U.S.C. § 1291.

II.

The issues Evans raises on appeal all turn on the scope of Section 1855's scienter requirement, which is a legal question we review de novo. *See United States v. Burgess*, 478 F.3d 658, 661 (4th Cir. 2007), *aff'd on other grounds*, 553 U.S. 124 (2008). According

5

to Evans, the district court's erroneous interpretation of the statute dictated its evidentiary rulings, jury instructions, and denial of his motion for a judgment of acquittal.

We agree with the district court that Section 1855's federal-ownership requirement is a jurisdictional element to which no *mens rea* attaches. Therefore, to obtain a conviction, the Government did not have to prove that Evans knew he was on federal land when he set the fire or that he intended to burn federal land. However, the statute did require the Government to prove that Evans set the fire willfully, which in the criminal context typically means the defendant acted with a bad purpose—that is, he understood the general unlawfulness of his actions. Evidence that Evans believed he was on his own property when he set the fire would support a defense to the general willfulness element and so should not have been excluded.

## A.

We first consider whether Section 1855 required the Government to prove that Evans knew he was on federal land when he started the fire or that he intended to burn federal land. As mentioned, Section 1855 punishes "[w]hoever, willfully and without authority, sets on fire any timber, underbrush, or grass or other inflammable material . . . upon any lands owned or leased by . . . the United States." 18 U.S.C. § 1855. The statute includes an explicit *mens rea* requirement: "willfully." The federal-ownership element does not contain a separate scienter requirement. Nothing in the statutory text indicates that a defendant must have specifically intended to burn government land. *Cf. Carter v. United States*, 530 U.S. 255, 268 (2000) (distinguishing between general and specific intent requirements); *United States v. Lewis*, 780 F.2d 1140, 1142–1143 (4th Cir. 1986) ("In the

6

absence of an explicit statement that a crime requires specific intent, courts often hold that only general intent is needed.").  And the term "willfully" denotes a "specific purpose" only "in exceptional cases."  *United States v. George*, 386 F.3d 383, 390 (2d Cir. 2004) (Sotomayor, J.).  Yet Evans contends that, at a minimum, "willfully" requires proof that he knew he was on federal land.  His argument fails because "willfully" does not apply to the federal-ownership requirement at all because it is solely a jurisdictional element, as explained below.

Generally, "'wrongdoing must be conscious to be criminal.'"  *Elonis v. United States*, 575 U.S. 723, 734 (2015) (quoting *Morissette v. United States*, 342 U.S. 246, 252 (1952)); *see Ruan v. United States*, 142 S. Ct. 2370, 2376 (2022).  So when we interpret criminal statutes, we normally presume "that Congress intends to require a defendant to possess a culpable mental state."  *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019); *see United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994).  And where, as here, a statute contains a general scienter provision, it typically "modifies not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts.'"  *Ruan*, 142 S. Ct. at 2377 (quoting *Rehaif*, 139 S. Ct. at 2197).

A criminal statute's jurisdictional element, however, usually has "nothing to do with the wrongfulness of the defendant's conduct" and so is "not subject to the presumption in favor of scienter."  *Rehaif*, 139 S. Ct. at 2196; *see Luna Torres v. Lynch*, 136 S. Ct. 1619,

7

1630–1631 (2016).[1]  In this context, "jurisdiction" refers not to the court's authority but to Congress's.  A "jurisdictional element" is one that "connects the law to one of Congress's enumerated powers, thus establishing legislative authority."  *Luna Torres*, 136 S. Ct. at 1630.  "[A]bsent an express indication to the contrary," courts assume that Congress intended a criminal statute's jurisdictional element "to stand outside the otherwise applicable *mens rea* requirement."  *Id.* at 1631; *see United States v. Yermian*, 468 U.S. 63, 68–69 (1984); *United States v. Feola*, 420 U.S. 671, 676 n.9 (1975); *United States v. Cooper*, 482 F.3d 658, 664–665 (4th Cir. 2007).

Section 1855's federal-ownership requirement is a jurisdictional element, so we presume that the statute's general *mens rea* requirement does not extend to it.  The statutory requirement that the timber or other material set ablaze be on "lands owned or leased by . . . the United States," 18 U.S.C. § 1855, ties the offense to Congress's power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States," U.S. Const. art. IV, § 3, cl. 2; *see Kleppe v. New Mexico*, 426 U.S. 529, 540 (1976) (explaining the Property Clause gives Congress "power over its own property analogous to the police power of the several states," including "to protect [it] from trespass and injury" (internal quotation marks omitted)).  "[F]ederal title to the land

---

[1] The presumption also does not apply to regulatory or public welfare offenses that carry minor penalties.  *See Ruan*, 142 S. Ct. at 2378.  But the Government does not ask us to apply that exception, and little reason exists to think such an argument would be successful.  *See Rehaif*, 139 S. Ct. at 2197; *Staples v. United States*, 511 U.S. 600, 618–619 (1994).

is merely a jurisdictional prerequisite," so we assume that "knowledge thereof is not an element of the substantive offense." *United States v. Allen*, 788 F.3d 61, 68 (2d Cir. 2015).

A closer look at the prohibited conduct confirms that Section 1855's federal-ownership requirement is not an element that "separate[s] wrongful conduct from innocent acts." *Ruan*, 142 S. Ct. at 2377 (internal quotation marks omitted). Section 1855 prohibits a form of arson, which "is hardly otherwise innocent conduct." *Allen*, 788 F.3d at 69 (internal quotation marks omitted). Arson has traditionally been considered culpable in and of itself, regardless of whether the United States owns the torched property. *See Ex parte Rapier*, 143 U.S. 110, 134 (1892) (describing arson as *malum in se*); *United States v. Trevino*, 7 F.4th 414, 425 (6th Cir. 2021) (same), *cert. denied*, 142 S. Ct. 1161 (2022). Additionally, Section 1855 requires that the defendant set the fire willfully—that is, with a "bad purpose" or "with knowledge that his conduct [is] unlawful." *Bryan v. United States*, 524 U.S. 184, 191–192 (1998) (internal quotation marks omitted). And it requires that he set the fire without the owner's authorization. So, whether the defendant acted "willfully and without authority" to burn the property of another—not whether the federal government owns the burned property—is what separates innocent from criminal conduct under the statute. 18 U.S.C. § 1855.

Evans argues that the federal-ownership requirement is both jurisdictional and substantive because someone who sets fire to his own property for a lawful purpose generally does not commit a crime. And if so, he continues, a defendant who thinks he is on his own property but is really on federal property should not be subject to criminal sanction under Section 1855. While this argument may constitute a valid defense based on

9

a defendant's mistake of fact, as explained below, it is not accurate for determining whether the Government must prove that the defendant harbored a certain *mens rea* regarding who owns the property.  Imagine two hypothetical cases: one defendant sets fire to his neighbor's private land and the other burns federal land, so that in each case the defendant is burning the property of another.  Section 1855's federal-ownership requirement would bring only the latter defendant within federal prosecutorial jurisdiction.  But in both hypothetical cases, the defendants' willful burning of another's property without permission is the culpable conduct that exposes them to criminal liability, despite the difference in ownership and resulting difference in judicial forum.

None of this is novel.  In *United States v. Feola*, the Supreme Court held that a statute prohibiting assault of a federal officer does not require a defendant to know the victim is a federal officer.  420 U.S. at 676–677, 684 (construing 18 U.S.C. § 111).  Instead, "[a]ll the statute requires is an intent to assault," and the victim's employment serves only as the offense's jurisdictional element.  *Id.* at 684.  In *United States v. Yermian*, the Court held that the crime of making a false statement in a matter within the jurisdiction of a federal department or agency does not require a defendant to know the matter falls within federal jurisdiction; knowingly and willfully making the false statement suffices for conviction.  468 U.S. at 68–70 (interpreting 18 U.S.C. § 1001).  In *United States v. Jeffery*, we held that government ownership of stolen property is only a jurisdictional element.  631 F.3d 669, 675 (4th Cir. 2011) (construing 18 U.S.C. § 641).  So, in a prosecution for such a theft, the Government does not have to prove the defendant knew the stolen property belonged to the United States.  *Id.*  And in *United States v. Green*, we held that in a

10

prosecution for making a false statement in connection with the purchase of a firearm from a federally licensed dealer, the Government need only prove the defendant knowingly made a false statement. 544 F.2d 746, 747–748 (4th Cir. 1976) (interpreting 18 U.S.C. § 922(a)(6)). A defendant's knowledge of the seller's federal licensure is not an element of the offense. *Id.*

In these cases, the assault, theft, and false statements were the culpable conduct warranting criminal sanction. That the assault victim, stolen property, and circumstances surrounding the false statements had a federal nexus merely brought the culpable conduct within the United States' jurisdiction. The same is true here. In Section 1855, the proscribed arson is the culpable conduct. That a defendant willfully set fire to *federal* land is the basis for prosecuting him in federal court.

Finally, Section 1855's purpose bolsters our conclusion that the federal-ownership requirement contains no *mens rea* component. Congress enacted Section 1855 and related statutes to protect federal land and property by making arson a federal crime. *See, e.g.,* 18 U.S.C. §§ 81, 1855; *see also Allen,* 788 F.3d at 67 ("Congress generally intended 'to prevent forest fires which have been one of the great economic misfortunes of the country.'" (quoting *United States v. Alford,* 274 U.S. 264, 267 (1927)). To require the Government to prove the defendant knew he was on federal land would weaken that protection. In *Feola,* the Supreme Court concluded that Congress intended 18 U.S.C. § 111 to "accord[] maximum protection to federal officers by making prosecution for assaults upon them cognizable in federal courts." 420 U.S. at 684. This purpose counseled against requiring that a defendant know the victim is a federal officer because such a requirement

11

"would give insufficient protection to the agent enforcing an unpopular law, and none to the agent acting under cover." *Id.* Similarly here, we decline to weaken the protection Section 1855 affords federal lands when the statutory text does not compel it, the prohibited conduct is otherwise culpable, and jurisdictional elements are assumed to "stand outside the otherwise applicable *mens rea* element." *Luna Torres*, 136 S. Ct. at 1631.

Accordingly, we hold that the federal-ownership requirement in Section 1855 is a jurisdictional element only. To obtain a conviction, the Government did not have to prove that Evans knew he was on federal land when he set the fire or that he specifically intended to burn federal land. It was only required to prove the fire was on federal land. The district court, therefore, correctly instructed the jury that the Government "does not need to prove that the defendant knew he was on federal land when he was setting the fire." J.A. 537.

### B.

Just because the Government did not need to prove that Evans knew he was on federal land when he set the fire, however, did not make his knowledge irrelevant. A defendant's mistake of fact concerning the location of the fire and his authorization to set it can in some circumstances cast a reasonable doubt on whether he acted willfully.

The word "willful" is "a word of many meanings, and its construction is often influenced by its context." *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) (internal quotation marks, brackets, and ellipsis omitted); *see Bryan*, 524 U.S. at 191. At its most basic, willfulness "differentiates between deliberate and unwitting conduct." *Bryan*, 524 U.S. at 191; *see RSM, Inc. v. Herbert*, 466 F.3d 316, 320 (4th Cir. 2006). Yet it can also refer to a culpable state of mind beyond that necessary for voluntary, deliberate action. "As

12

a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'" *Bryan*, 524 U.S. at 191.

To prove criminal willfulness, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Ratzlaf*, 510 U.S. at 137; *see Bryan*, 524 U.S. at 191–192. Or to put it differently, a "jury must find that the defendant acted with an evil-meaning mind," *Bryan*, 524 U.S. at 193, or acted "in deliberate disregard of, or with plain indifference toward, either known legal obligations or the general unlawfulness of the actions," *RSM, Inc.*, 466 F.3d at 321–322. Ignorance of the law is no excuse, but a defendant must know of his conduct's general unlawfulness. *See Bryan*, 524 U.S. at 196; *United States v. Bishop*, 740 F.3d 927, 933–934 (4th Cir. 2014); *United States v. Bursey*, 416 F.3d 301, 308–309 (4th Cir. 2005). Criminally willful conduct has variously been described as: "(1) acting without justifiable excuse; (2) acting stubbornly, obstinately, perversely; (3) acting without ground for believing it is lawful; and (4) acting with careless disregard as to whether or not one has the right so to act." *United States v. Blankenship*, 846 F.3d 663, 672 (4th Cir. 2017) (internal quotation marks and brackets omitted).

In contrast to the "bad purpose" animating criminal willfulness, "criminal sanctions normally do not attach" to "innocent mistake[s]," *Rehaif*, 139 S. Ct. at 2197, because "an honest mistake of fact would not be consistent with criminal intent," *Feola*, 420 U.S. at 686. Instead, a mistake of fact may prove the defendant lacked the culpable mental state necessary to commit the offense and is thereby relieved of criminal liability. *See United States v. Bowling*, 770 F.3d 1168, 1174 (7th Cir. 2014); *see also United States v. Iron Eyes*, 367 F.3d 781, 784 (8th Cir. 2004) ("[I]f a defendant reasonably though mistakenly believes

13

facts that negate the mental state necessary for conviction . . . , the crime simply has not been committed," regardless of whether it requires general or specific intent.).

To mount a successful defense, "a defendant may cast a reasonable doubt upon the existence of mens rea by showing that, under the circumstances, he reasonably believed the facts to be other than they were and that his actions would have been innocent had his belief been correct." *United States v. Goodwin*, 440 F.2d 1152, 1156 (3d Cir. 1971); *see, e.g., United States v. Behenna*, 552 F.2d 573, 576–577 (4th Cir. 1977). Such a defense is cognizable to negate intent "when the *mens rea* requirement for a crime is at least knowledge." *United States v. Fulcher*, 250 F.3d 244, 252 (4th Cir. 2001).

The mistake-of-fact defense is available to defendants charged under Section 1855. The statute requires that a defendant set the fire "'willfully,'" which "denote[s] a mental state of greater culpability than the closely related term, 'knowingly.'" *RSM, Inc.*, 466 F.3d at 320; *see Bursey*, 416 F.3d at 308 n.8. A defendant may attempt to negate the willfulness element by showing that he mistakenly believed he was not on federal land and had authorization to set the fire. A sufficiently strong showing could convince a factfinder that the defendant reasonably but incorrectly believed that his conduct was lawful and that he did not carelessly disregard whether he had the right to set the fire—in other words, that he acted without criminally culpable intent. *See Blankenship*, 846 F.3d at 672. This is especially true when a defendant mistakenly, but reasonably, believes he is on his own property, because setting a fire on one's own property is not generally unlawful.

A mistake-of-fact defense may negate criminal intent even though the Government need not prove any *mens rea* regarding the federal-ownership element. The Supreme Court

14

reached a similar conclusion in *Feola*. There, the Court held that to obtain a conviction for assault of a federal officer under 18 U.S.C. § 111, the Government did not have to prove the defendant knew the assault victim was federally employed. *See Feola*, 420 U.S. at 684. Nevertheless, the Court kept open the possibility that a defendant's mistake concerning the victim's identity could be a defense to criminal liability. For example, "where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property." *Id.* at 686. In that situation, the defendant "might be justified in" resisting, and the defendant's "honest mistake of fact" concerning the officer's identity "would not be consistent with criminal intent." *Id.* As here, the lack of a scienter component within the statute's jurisdictional element did not foreclose a defendant from using a factual mistake regarding the same knowledge as a defense to the statute's general intent requirement. *See United States v. Williams*, 604 F.2d 277, 279–280 (4th Cir. 1979).

Our conclusion is consistent with other courts that have allowed a mistake-of-fact defense based on defendants' beliefs that they were not on federal land when they committed the prohibited acts with which they were charged. In *United States v. Quarrell*, the defendants were charged with unauthorized excavating on public land in violation of 16 U.S.C. § 470ee(a). 310 F.3d 664, 669–670 (10th Cir. 2002). The Tenth Circuit held that whether the defendants "knew they were on public land" was not "an element of the crime." *Id.* at 674. Nonetheless, the court held that defendants charged under Section 470ee(a) could "present a mistake of fact defense" based on a reasonable and honest belief that they were excavating private, not federal, property and had permission to do so. *Id.* at

15

674–675.  Likewise, in *United States v. Sawyers*, the defendant was charged, *inter alia*, with cutting and removing timber from federal land in violation of 18 U.S.C. § 1852.  186 F. Supp. 264, 265 (N.D. Cal. 1960).  In denying the defendant's motion to dismiss, the court reasoned that the defendant could attempt "to show that the timber was cut or removed under the well-grounded belief that it was from lands other than those of the United States.  Proof of such a mistake of fact, honestly and conscientiously made, would be a defense to the charge in this case." *Id.* at 266.

To summarize, the Government does not have to prove that the defendant knew he was on federal land or intended to burn federal land to obtain a conviction under 18 U.S.C. § 1855.  But the Government does have to prove that the defendant acted willfully, and a defendant may attempt to demonstrate an honest mistake of fact to negate the Government's proof on that score.

## C.

Accordingly, we conclude that the district court made an error of law when it excluded Evans's proffered testimony on the ground that his "subjective belief" about whether he was on his family's property when he set the fire was inadmissible for any purpose "because it's not relevant to the issues in this case."  J.A. 394; *see United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007) ("A district court abuses its discretion when it . . . commits an error of law.").  Although the court began from the correct premise—that Section 1855 is a general intent crime and the federal-ownership requirement contains no *mens rea* component—the court's evidentiary rulings reached beyond what that premise could support.  Evans explained that he sought to present evidence "that he had a sincere

16

and reasonable belief that his actions took place on land owned by his family and with their authorization." J.A. 33. He argued that this evidence implicated "the issue of willfulness" and how the caselaw treats "somebody [who] makes an honest mistake." J.A. 50. The district court did not engage this line of argument or account for the possibility that a defendant may attempt to prove a factual mistake to undermine the Government's proof of willfulness. Instead, the court excluded Evans's testimony as irrelevant to disproving the federal-ownership element.

But Evans's testimony was directly relevant to contesting the *willfulness* element because the testimony shed light on whether Evans made the kind of factual mistake that would preclude a finding that he acted with an awareness of the general unlawfulness of his actions. If, as Evans testified in his proffer, he honestly believed the boundary lines were such that he was on his family's property when he assembled and set fire to the brush pile, then he could have lacked the culpable criminal intent necessary for conviction under Section 1855. In other words, Evans's beliefs about the location of the fire and his permission to set it were relevant to a defense to the willfulness element even though, as the district court recognized, the same beliefs were irrelevant to the federal-ownership requirement.

The Government contends that we may nevertheless affirm Evans's conviction because the district court's error in excluding his testimony was harmless. *See United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) ("Evidentiary rulings are subject to harmless error review."). An error is harmless if we are "able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole,

17

that the judgment was not substantially swayed by the error." *Id.* (internal quotation marks omitted).  On this record, we cannot say the error was harmless.  The excluded testimony was Evans's primary defense.  If credited by the jury, the testimony would have squarely raised the issue of whether he made a factual mistake sufficient to cast a reasonable doubt on the willfulness of his actions in setting the fire.  The jury, not this Court, must assess the credibility of the proffered testimony and weigh it against the Government's evidence to make that judgment.[2]

### III.

For these reasons, we vacate Evans's conviction under 18 U.S.C. § 1855.  We remand the case to the district court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[2] The Government highlights evidence suggesting that, at the time he set the fire, Evans believed he was on federal land and did not intend to burn only his own property. Because the Government presented substantial evidence to support the jury's verdict, we affirm the district court's denial of Evans's motion for acquittal. *See United States v. Roe*, 606 F.3d 180, 186 (4th Cir. 2010).  But because the jury did not have all the relevant evidence, we must vacate Evans's conviction.