AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

REGGIE MACOMBER, Defendant

High Court of American Samoa
Trial Division

CR No. 45-88

October 24, 1988

Before REES, Chief Justice, TAUANU'U, Chief Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Barry I. Rose
For Defendant, Charles Ala'ilima

On Motion to Vacate Sentence:

Defendant was convicted of "felony driving while license is suspended." He was sentenced to serve ninety days in prison, the statutory minimum. A.S.C.A. § 22.0223. Defendant now moves that his sentence be vacated on the ground that the statutory minimum sentence denies him the equal protection of the laws.

The Revised Constitution of American Samoa contains no equal protection clause. Nor is it clear to what extent the equal protection clause of the Fourteenth Amendment to the United States Constitution applies in American Samoa. The United States has held that in territories not intended for incorporation into the United States Supreme Court, the Constitution applies only insofar as its tenets restate "those fundamental limitations in favor of personal rights" that are "the basis of all free government." Dorr v. United States, 195 U.S. 138, 146, 147 (1904); see also Balzac v. Porto Rico, 258 U.S. 298 (1922); Commonwealth of the Northern Mariana Islands v. Atalig, 723 F.2d 682 (9th Cir. 1984); Banks v. American Samoa Government, 4 A.S.R.2d 113 (1987). In the case now before us, however, both the government and the defendant argue that the statute in question should be held unconstitutional unless there is some rational basis for the distinction it makes. We therefore assume for the purposes of this case that the equal protection clause is applicable in the Territory at least insofar as it requires a rational basis for statutory classifications.

The "felony driving while license is suspended statute," A.S.C.A. § 22.0223, applies only to those whose licenses were suspended pursuant to A.S.C.A. § 22.0211, which requires suspension or revocation upon conviction for driving under the influence of alcohol or drugs. Those who drive while their licenses are suspended for some other reason are guilty only of a misdemeanor punishable by a minimum of fifteen days in the correctional facility. A.S.C.A. §§ 22.0219, 22.0222(9). Moreover, the general sentencing provisions (under which those convicted of misdemeanor driving while under suspension would be sentenced) allow the judge to suspend the sentence and impose a period of probation; A.S.C.A. §22.0223, on the other hand, specifically requires ninety days "in custody." Defendant argues that this statutory scheme impermissibly discriminates between drivers whose licenses were suspended for driving under the

influence and those whose licenses were suspended for some other reason.

This argument is, however, foreclosed by a long line of United States Supreme Court decisions. See United States v. Batchelder, 442 U.S. 114, 123-25 (1979), and authorities cited therein. In Batchelder the Court was faced with two statutes prescribing different penalties for the same crime. The Court held that this was not unconstitutional and that the government was free to seek a conviction under the statute prescribing the higher penalty. "Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced." Id. at 125.

The Batchelder Court held the case before it to be constitutionally indistinguishable from earlier cases in which two statutes defined different penalties for slightly different crimes. In these cases the Court had held that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." Id. at 123-24. See, e.g., Berra v. United States, 351 U.S. 131 (1956); United States v. Beacon Brass Co., 344 U.S. 43 (1952).

Defendant attempts to distinguish Batchelder on the ground that in this case the defendant "violat[ed] . . . only one statute, . . . and in accordance the government is allowed under the present legislative scheme to prosecute Mr. Macomber under only that statute." This seems wrong. By driving while his license was suspended, Mr. Macomber would appear to have violated the general statutory prohibition against doing "any act forbidden . . . by this chapter." A.S.C.A. § 22.0222. Since there was an additional element in Mr. Macomber's offense --- the fact that his suspension resulted from a conviction for driving under the influence --- he was also guilty of a violation of A.S.C.A. § 22.0223. The government has discretion to prosecute for a lesser included offense even when the defendant has committed all the elements of a greater offense; indeed, the government has discretion not to prosecute at all.

In the present case the range of prosecutorial discretion would seem to have included (1)

185

prosecution under the felony statute, (2) prosecution under the misdemeanor statute, or (3) no prosecution at all. If so, the constitutionality of prosecuting this defendant under the felony statute follows _a fortiori_ from _Batchelder_: in that case the two statutes defined identical crimes but one imposed a heavier penalty, whereas in this case the statute prescribing the heavier penalty requires proof of an extra element.

Suppose, however, that the Attorney General had no discretion to prosecute the present defendant under the misdemeanor statute. This would mean only that the legislature had exercised the same sort of discretion the Supreme Court upheld when exercised by prosecutors in _Batchelder_: the discretion to draw lines between different species of generically similar conduct. It would seem even more clear that a court should not interfere with such line-drawing when it is done by a legislature than when the legislature has delegated it to executive officials. _Cf_. _Batchelder_, 442 U.S. at 125-26. This does not mean that no legislative distinction will ever fail the rational basis test: if the Fono had prescribed a harsher penalty for Koreans or Methodists who drive with their licenses suspended than for others, the distinction would "discriminate against [a] class" and would therefore be impermissible. _Id._ at 124. In this case, however, the law discriminates on the basis of conduct rather than status. It draws a distinction between (1) people who drive under the influence and then drive with a suspended license; and (2) those who commit other sorts of conduct punishable by suspension and then drive with a suspended license. The legislature was not trying to hurt a particular class of people; rather, it believed there was a special need to deter and punish drunken driving. The means chosen --- a mandatory suspension of the right to drive, followed by a mandatory jail term if the defendant flouts the suspension --- may not have been perfect, may not even have been the best means available, but they were not irrational.[1] _Cf._

---

[1] If the rational basis test seems extremely deferential to legislative and executive discretion in prescribing sentences, this is because it is. In _Batchelder_, for instance, the Court upheld the classification before it against an equal protection

186

American Samoa Government v. To'oto'o, 2 A.S.R.2d 61 (1985).

Defendant relies heavily on a somewhat different test articulated in People v. Marcy, 628 P.2d 69 (Colo. 1981). Marcy was based on a provision of the Colorado state constitution rather than on the equal protection clause of the United States Constitution. Id. at 71 & n.1. Although Colorado does not have an equal protection clause in its state constitution, the state courts have construed the state due process clause to include an equal protection component. See id. This makes it possible for the state supreme court to strike down state laws by applying a more stringent equal protection doctrine than that articulated by the United States Supreme Court. Such a doctrine may borrow heavily from federal equal protection jurisprudence --- perhaps rejecting the reasoning of the majority opinions and following the dissents instead --- but so long as it is formally based on the state rather than the federal constitution it is most unlikely to be overruled by the Supreme Court. See Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489 (1977). Accordingly, Marcy explicitly rejects the Batchelder test in favor of a requirement that "statutory classifications of crimes be based on

---

challenge without finding it necessary to articulate exactly what the "rational basis" for the classification was. In essence, the Court acknowledged the possibility that the statutory scheme would allow prosecutors and judges to distinguish irrationally between different defendants, but refused to assume that they would do so. See 442 U.S. at 125-26. Rather, it is up to an individual defendant to prove that such discretion has been exercised irrationally in his case--- that is, that the decision to prosecute him under the harsher statute was "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Id. at 125 n.9, quoting Oyler v. Boles, 368 U.S. 448, 456 (1962). In other words, the basis for a distinction made by the legislature or executive is presumed to be rational until it is shown to have been affirmatively impermissible. Cf. Williamson v. Lee Optical Co., 348 U.S. 483 (1955).

187

differences that are real in fact and reasonably related to the general purposes of criminal legislation." 628 P.2d at 74.

Like Colorado, this Territory has no equal protection clause in its constitution. For reasons related to those articulated in Banks v. American Samoa Government, supra, it seems most unlikely that the federal officials who promulgated our constitution or the local leaders whose deliberations led up to its promulgation intended to include an unwritten equal protection clause more demanding than the explicit one contained in the federal constitution. lt would be most inappropriate for the judicial branch to supply one. If any equal protection clause applies to this case it is the one construed definitively in Batchelder. Cf. American Samoa Government v. To'oto'o, supra, at 62-63.

Even under the contrary rule articulated in Marcy, however, the classification before us would seem valid. In Marcy the court found that it was impossible to distinguish between the conduct necessary to commit a certain kind of first degree murder and that necessary to commit a certain kind of second degree murder. 628 P.2d at 75-80. The Court held that no one could be punished under the stricter statute since it was not "sufficiently coherent and discrete that a person of average intelligence can reasonably distinguish it from conduct proscribed by other offenses." Id. at 80-81. In this case defendant does not argue that the distinction between the two types of conduct is unclear, but only that it is not right.

Counsel for defendant asks whether people who drive under the influence are any more in need of deterrence and punishment, or any more likely to be deterred or punished by a mandatory jail term, than people who commit reckless driving or homicide by vehicle. The answer, of course, is that the Court does not know. The Court also does not know whether embezzlement is more in need of deterrence or punishment than sexual abuse in the second degree, or whether there might not be some people who are technically guilty only of manslaughter but whose actions were more culpable than those of some felony murderers.

Defendant seems to suggest that unless the Court does know the answer and unless the answer is

a clear "Yes," the statutory classification must fall. But this is not the rational basis test; it is not even the rule of Marcy. In order to apply such a test the Court would have to devise a comprehensive scheme assessing the comparable worth of various offenses. The scheme would have to take in moral culpability, the need for deterrence, the likelihood that prison sentences would deter the proscribed conduct, and other factors in order to arrive at a range of sentences that would survive judicial scrutiny. And then most criminal statutes would turn out to be unconstitutional. Practically any criminal defendant can point to some other person who has been more culpable and troublesome and yet has been punished less severely.

We need not decide whether the legislature was right to select drunken driving as a special problem meriting special treatment. There does seem to be more of it than of homicide by vehicle, or even of non-alcoholic reckless driving. Deterring people from driving under the influence also presents special problems, since by the time the person gets behind the wheel he may not be in a frame of mind to be deterred. An effective deterrent must persuade people to rearrange their lives in whatever ways are necessary to ensure that they make the final decision about whether to drink and drive while sober, not while drunk. Perhaps the penalty must carry with it an unusual degree of severity and of certainty in order to accomplish this. But this sort of balancing and line-drawing is the essence of the legislative function. We cannot say the judgment of the Fono was clearly right; neither can we say it was clearly wrong, much less irrational. We are therefore bound to uphold the statute. See American Samoa Government v. To'oto'o, supra.

The motion to vacate the sentence is denied. The stay of imposition of the sentence will extend for an additional fifteen days to allow defendant to seek appellate relief if he so desires.

It is so ordered.